**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| MATTHEW R. MCCUTCHEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-579-SEB-WTL |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Matthew R. McCutcheon ("McCutcheon") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

McCutcheon filed applications for DIB and SSI on October 16, 2002, alleging an onset date of disability of January 1, 1998. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted. Hearings were conducted on May 9, 2005, and September 18, 2006. McCutcheon was present, accompanied by his attorney. Medical and other records were introduced into evidence, and McCutcheon, two medical experts and a vocational expert testified at each hearing. The ALJ issued a decision on December 19, 2006, denying benefits. On April 13, 2007, the Appeals Council denied McCutcheon's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) McCutcheon had not engaged in substantial gainful activity since January 1, 1998, his alleged onset date; (2) McCutcheon was insured for DIB on that date and remained insured through September of 1999; (3) McCutcheon had "severe" impairments, specifically a seizure disorder and several mental impairments; (4) McCutcheon did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments; (5) McCutcheon was not a credible witness or informant; (6) McCutcheon's residual functional capacity ("RFC") required him to avoid hazards and climbing ropes, ladders or scaffolds, and he was limited to simple repetitive tasks that involve only occasional contact with the public and incidental contact with supervisors and co-workers; (7) McCutcheon's RFC required no task inconsistent with his past relevant work as an assembler; (8) McCutcheon was a "younger individual" with a "limited" education and no transferable work skills; (9) in the alternative, there were 18,000 assembly jobs at the light exertional level in the State of Indiana that McCutcheon could perform consistent with his RFC and vocational factors, and there were another 7,200 at the medium level, which constituted a significant number of jobs. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that McCutcheon was not disabled at steps four and/or five of the sequential evaluation process.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

2

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

In this case, the ALJ determined that McCutcheon had severe impairments consisting of a seizure disorder and several mental impairments but that he could perform his past relevant work as well as a significant number of light and medium exertional level jobs. McCutcheon argues that the ALJ's decision is not supported by substantial evidence.

McCutcheon first argues that the ALJ erred at step three by failing to cite or discuss any listing.[1] McCutcheon contends that his impairments met or equaled Listings 11.02 (major motor seizures), 11.03 (minor seizure disorders),[2] 12.04 (affective disorders) and 12.06 (anxiety related disorders). Although the ALJ did not specify any listing by name, it is apparent that he considered McCutcheon's seizure disorder and mental impairments in that context. The ALJ explained that McCutcheon's seizures were controlled when he took his medication as prescribed, which meant they did "not occur with the requisite frequency to satisfy the Listings." (R. at 22). The ALJ further stated that McCutcheon's depression caused only a mild limitation in functioning. *Id.* The ALJ's findings that McCutcheon's daily living activities were no more than mildly impaired by his mental impairments, he had

---

[1] McCutcheon's contention that the ALJ's decision violated his due process rights is not supported by any examples of extreme conduct or partiality which rise to the level of fundamental unfairness and therefore will not be discussed any further. *See Keith v. Barnhart,* 473 F.3d 782, 788 (7th Cir. 2007).

[2] Listing 11.02 (convulsive epilepsy) is satisfied when the claimant has grand mal or psychomotor seizures, documented by detailed description of a typical seizure pattern, including all associated phenomena which occur more frequently than once a month in spite of at least 3 months of prescribed treatment, with either daytime episodes (loss of consciousness and convulsive seizures) or nocturnal episodes (manifesting residuals which interfere significantly with activity during the day). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 11.02.  Listing 11.03 (nonconvulsive epilepsy) is satisfied when the claimant has petit mal, psychomotor, or focal seizures documented by detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment, with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. *Id.,* Listing 11.03.

moderate limitations in social functioning, and mild limitations in concentration, persistence and pace, correlate to subpart B of Listings 12.04 and 12.06 and further support the determination that McCutcheon's impairments did not satisfy these listings. (R. at 26). The ALJ's discussion of the evidence provides adequate support for his determination that McCutcheon's impairments did not satisfy any listing.

The court acknowledges the statement in *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) that "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) and other cases). *See also Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) ("As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here."). Under the circumstances discussed herein, however, the ALJ's analysis was not perfunctory. In addition, the State Agency physicians opined that McCutcheon's impairments did not satisfy any listing. (R. at 26, 56). Moreover, the medical experts testified that McCutcheon's impairments did not satisfy the seizure or mental health listings. (R. at 501, 530).

McCutcheon also argues that none of the four medical experts who testified at the hearings had expertise in neurology or seizures. He contends that the ALJ erred by not honoring his request to provide a neurologist medical advisor at the hearing to determine whether McCutcheon's seizures and depression impairments were medically equivalent to Listings 11.02, 11.03 and 12.02 (organic mental disorders). The medical experts in this case were psychologists and specialists in internal medicine and pulmonary medicines. (R. at 26). McCutcheon has presented no authority for his contention that the ALJ violated his duty to fairly and fully develop the record under these circumstances. SSR 96-8p states that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." An ALJ is not obligated to honor every request for a consultative examination. Rather, an ALJ will request such an examination if he does not have sufficient evidence to decide whether a claimant is disabled and information is not available from treating medical sources. 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3); 404.1512(f); 416.912(f). In this case, the ALJ had sufficient evidence and relevant expertise available to make a fair determination. In addition, McCutcheon's assertion that the ALJ erred by not ordering IQ tests is not persuasive given McCutcheon's alleged impairments of seizures, back pain, and depression and given Dr. Thomas' testimony that IQ scores would not be required in this case to rule out a diagnosis of mental retardation. (R. at 492-95). In sum, there is no reversible error at step three of the analysis.

Next, McCutcheon argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In determining McCutcheon's credibility, the ALJ recited the appropriate regulations. (R. at 27, citing 20 C.F.R. §§ 404.1529(c), 416.929(c) and Social Security Ruling 96-7p.). The ALJ discussed McCutcheon's testimony and daily activities.

(R. at 23-26). He noted that McCutcheon lived in his father's garage/apartment and was able to take care of his own personal and grooming needs. (R. at 25). McCutcheon handled his own domestic chores such as cooking, cleaning and shopping. (R. at 25-26). The ALJ discussed evidence showing McCutcheon's moderate limitations in social functioning and mild limitations in concentration, persistence and pace. (R. at 26). The ALJ reviewed all of McCutcheon's alleged symptoms, including seizures, back pain, carpal tunnel syndrome in his elbows, left knee problems, and depressive symptoms. (R. at 23).

The ALJ also noted that when Dilantin was first prescribed for McCutcheon's seizures in 1998, McCutcheon did not have any more seizures for several months. (R. at 24). Since then, however, McCutcheon has been noncompliant with his medication and has missed neurology appointments. *Id.* The ALJ discussed the objective medical evidence, including a 1999 CT scan, a 2004 EEG and 2004 MRI. (R. at 24-25). The 2004 MRI showed mild central disc protrusion and mild facet joint disease at the L5-S1 level of the lumbar spine, causing no nerve root impingement or spinal stenosis. (R. at 25). The ALJ also noted a 2006 MRI of McCutcheon's thoracic spine which showed chronic compression fractures at multiple levels with kyphosis, but no neurological deficits or loss of muscle strength. *Id.* The ALJ reviewed reports of consulting examining physicians and the opinions of the medical experts. (R. at 25-27). The ALJ noted that McCutcheon had a long history of abusing alcohol, illegal drugs and prescription medication. (R. at 27). He further recited evidence that McCutcheon had unilaterally stopped taking medication prescribed for his mental impairments and that he had failed to keep appointments for mental health treatment. (R. at 27, 201). Treating psychologist Dr. Levine reported that McCutcheon's mental impairments were controllable with medication and lifestyle changes, but his compliance was poor. *Id.* McCutcheon had "evidently lied to SA about his pattern of drug abuse because he thought it would result in a denial of his disability claims." (R. at 27). The ALJ noted that McCutcheon had made inconsistent statements to medical providers, such as his report to a physician that periodic blood tests showed that McCutcheon had normal Dilantin levels, when in fact he had not had a blood test for several years, and prior tests had shown low levels. (R. at 27, 254). The ALJ acknowledged McCutcheon's reports that he had anger problems and that he avoided people to keep from getting into fights. (R. at 24).

The ALJ provided specific reasons for his finding that McCutcheon was not credible and those reasons are supported by the record. *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The Seventh Circuit has not required ALJs to mechanically recite findings on each factor listed in the regulations. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("an ALJ's credibility assessment will stand as long as [there is] some support in the record") (internal quotation omitted). The ALJ considered proper factors including objective medical evidence, McCutcheon's daily activities, allegations of his symptoms, and types and effectiveness of medications, as well as examples of inconsistent or false statements and noncompliance with treatment. (R. at 24, 27); *see* 20 C.F.R. §§ 404.1529(c), 416.929(c); Social Security Ruling 96-7p (consistency of statements and failure to pursue regular treatment are appropriate factors to consider). The ALJ credited McCutcheon's reports of functional limitations to some extent in assessing his RFC by limiting him to simple, repetitive tasks that involve only occasional contact with the public

and incidental contact with supervisors and co-workers. (R. at 27). The ALJ's discussion relating to McCutcheon's credibility is adequate to allow the court to trace his reasoning. The ALJ sufficiently articulated his assessment of McCutcheon's credibility and that assessment was not patently wrong. The court, therefore, must affirm the ALJ's credibility determination.

McCutcheon next contends that the ALJ erred at step four of the analysis by failing to make specific findings of the physical and mental requirements of his past job as an assembler. Although the ALJ did not discuss the particular job at issue, during the hearing he asked the vocational expert about McCutcheon's past relevant work. (R. at 534-35). The vocational expert testified that she had reviewed McCutcheon's earnings record and that his past work consisted of assembly work which was simple and unskilled at the light level of exertion. *Id.* The court need not determine whether this testimony provided a sufficient basis for the ALJ's step four decision because the ALJ found in the alternative at step five of the analysis that, based on the vocational expert's testimony, there were a significant number of light and medium level assembly jobs that McCutcheon could perform. (R. at 27-28). *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")*.*

Finally, McCutcheon contends that the ALJ's step five decision is not supported by substantial evidence because the ALJ relied only on evidence that favored his decision. McCutcheon argues that the ALJ ignored or rejected all of the evidence proving total disability. Contrary to McCutcheon's suggestion, none of his record citations "prove" disability. The evidence McCutcheon alleges was ignored by the ALJ consists primarily of evidence of McCutcheon's seizure activity and treatment. The ALJ did acknowledge that McCutcheon experienced seizures as well as the fact that the record showed that when he took his Dilantin properly and consistently, his seizures were controlled. (R. at 24, 26, 27). McCutcheon asserts that the ALJ ignored two mental health clinic reports two years apart, January 27, 2000, and December 23, 2002, which reflected his symptoms of anger and anxiety. The ALJ did not ignore McCutcheon's claims of difficulty controlling anger, rather he concluded that McCutcheon had moderate limitations in social functioning. (R. at 26). He also accommodated these symptoms by limiting him to work that was simple and repetitive and involved only occasional contact with the public and incidental contact with co-workers. (R. at 28). Contrary to McCutcheon's assertion, the ALJ did not ignore his claim of back pain nor the MRI taken in March 2004. (R. at 23, 25). An ALJ is not required to recite every piece of evidence or discuss every statement in every record. *Rice v. Barnhart*, 384 F.3d at 371. Here, as in *Rice*, "the ALJ satisfied his minimal duty to articulate his reasons and make a bridge between the evidence and the outcome as to his step five determination." *Id.*

One piece of evidence that McCutcheon contends was ignored by the ALJ bears further examination. That evidence is a physical capacities evaluation form completed on December 15, 2006, by a Dr. Kannappan at the Cottage Corner clinic, which indicated that McCutcheon was unable to perform any work activities due to seizures and back pain. (R. at 407-08). Although McCutcheon refers to Dr. Kannappan as a treating physician, he has

6

N/A

not cited to nor has the court located any evidence of any prior treatment history. McCutcheon also fails to mention that this particular report was not received by the Social Security Administration until December 19, 2006, the day the ALJ's decision was issued, and that the report was received as additional evidence presented to the Appeals Council. (R. at 10A, 14). The ALJ could not review evidence that was not before him at the time he drafted his decision.

The court must decline McCutcheon's invitation to reweigh the evidence because the court "cannot engage in [its] own analysis of whether [a claimant] is severely impaired as defined by the SSA regulations." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Rice v. Barnhart*, 384 F.3d at 369 ("we will not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.") (internal quotation omitted); *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Here the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). As is the case here, an "ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). Accordingly, because substantial evidence supports the ALJ's evaluation of McCutcheon's impairments, the ALJ's decision must be affirmed.

### III. CONCLUSION

There was no reversible error in the assessment of McCutcheon's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. For the reasons discussed in this Entry, McCutcheon is not entitled to further relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 07/14/2008

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana